**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| ANGELA LOWE, ) | CASE NO. 1:08-CV-01339 |
| ) | |
| Plaintiff, ) | JUDGE DONALD C. NUGENT |
| ) | |
| v. ) | |
| ) | MAGISTRATE JUDGE GREG WHITE |
| CUYAHOGA COUNTY/BOARD OF ) | |
| COUNTY COMMISSIONERS , *et al.*, ) | |
| ) | |
| Defendants. ) | **REPORT AND RECOMMENDATION** |

Before the Court for a report and recommendation is Third Party Defendant, State Automobile Mutual Insurance Company's ("hereafter "State Auto") Motion for Reconsideration. (ECF Nos. 211, 224.)

**I. Procedural Background**

This matter began as a wrongful death action by Plaintiff Angela Lowe, individually and as administratrix of the estate of her late husband, Sean Levert, who died while in custody at the Cuyahoga County jail. (ECF No. 99.) The Fourth Amended Complaint, filed on April 7, 2010, specifically alleged the following causes of action: a deprivation of decedent's rights pursuant to 42 U.S.C. §1983; wrongful death under Ohio law; malpractice against physicians and nurses of the Cuyahoga County Jail; negligence against Defendants Midwest Medical Staffing and Dr. Emmanuel Tuffuor; negligence against Defendants Cuyahoga County, Sheriff Gerald McFaul, Kenneth Kochevar, and Christine Dubber; and, loss of consortium. *Id*.

On May 21, 2010, Defendant Cuyahoga County (hereafter "the County") filed cross-claims against Defendant Midwest Medical Staffing (hereafter "MMS") alleging common law indemnity or contribution and breach of contract. (ECF No. 118.) The County also filed a third-party complaint against State Auto asserting that the County is entitled to defense and indemnity

under a liability policy issued to MMS by State Auto. *Id.*

On June 16, 2010, after mediation, the parties reached a contingent settlement disposing of all claims except the County's claim against State Auto.[1]  (ECF No. 141.)  Jonathan Mount attended the mediation as a representative of State Auto.  (ECF No. 141-1.)

On October 18, 2010, State Auto filed a Motion for Summary Judgment.  (ECF No. 163.)  The County and related Defendants filed a Motion for Summary Judgment as to coverage issues on November 15, 2010.  (ECF No. 165.)  On December 9, 2010, District Court Judge Nugent denied State Auto's Motion for Summary Judgment.  (ECF No. 167.)  On December 20, 2010, State Auto filed a brief in opposition to the County's motion and a Cross-Motion for Summary Judgment.  (ECF No. 172.)  The County filed a brief in support of its motion and opposing State Auto's cross-motion on December 20, 2010.  (ECF No. 173.)  On February 9, 2011, Judge Nugent granted the County's motion for summary judgment while denying State Auto's cross-motion.  (ECF Nos. 178-79.)

On February 23, 2011, State Auto filed a Motion to Amend Judgment, followed by a Motion for Reconsideration and Motion to Alter/Amend Judgment on March 7, 2011.  (ECF Nos. 180, 181.)  On March 31, 2011, Judge Nugent denied all of State Auto's motions.  (ECF No. 185.)

Four and one-half months later, State Auto filed a second Motion for Reconsideration.  (ECF No. 211.)  That motion, now fully briefed, is before the Court.  (ECF Nos. 214, 215.)

## II.  Legal Standards

**A.   Summary Judgment Standard**

Federal Rule of Civil Procedure 56(a) governs summary judgment motions and states:

> A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

---

[1] All claims but those against State Auto were ultimately dismissed on December 28, 2010.  (ECF No. 174.)

In considering summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party when determining whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989)(*citing Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record which create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id.* "[T]he plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment. This is true even where the evidence is likely to be within the possession of the defendant, as long as the plaintiff has had a full opportunity to conduct discovery." *Liberty Lobby*, 477 U.S. at 257.

In other words, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007). Thus, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

**B.     Motions for Reconsideration**

Motions for reconsideration are not specifically provided for in the Federal Rules of Civil Procedure. The Sixth Circuit Court of Appeals has opined that such motions are properly treated

3

as motions to alter or amend a judgment under Rule 59(e). *See McDowell v. Dynamics Corp. of America*, 931 F.2d 380, 382 (6th Cir. 1991); *Smith v. Hudson*, 600 F.2d 60, 62 (6th Cir. 1979) ("[A] motion which asks a court to vacate and reconsider, or even to reverse its prior holding, may properly be treated under Rule 59(e) as a motion to alter or amend a judgment."); *Washington v. Kelly,* 2009 WL 233711, *2 -3, Case No. 1:05cv577 (N.D. Ohio, Jan. 30, 2009). This Court has previously noted that "[m]otions for reconsideration are 'extraordinary in nature and, because they run contrary to notions of finality and repose, should be discouraged.'" *Plaskon Elec. Materials, Inc. v. Allied-Signal, Inc.*, 904 F.Supp. 644, 669 (N.D. Ohio 1995) (citations omitted); *accord Wells Fargo Bank v. Daniels*, No. 1:05-CV-2573, 2007 U.S. Dist. LEXIS 80694 at *3 (N.D. Ohio, Oct. 22, 2007).

### III. Analysis

**A. Timeliness of Motion**

Because motions for reconsideration, such as this one, are properly treated as motions to alter or amend a judgment under Rule 59(e), the County argues they should also comply with the rule's timeliness requirements. (ECF No. 214 at 3.) The express language of Rule 59(e) states that motions "must be filed no later than 28 days after the entry of the judgment." Moreover, Fed. R. Civ. P. 6(b)(2) directs that a "court must not extend the time to act" under Rule 59(e). *See, e.g., Rodriguez v. City of Cleveland*, 2009 U.S. Dist. LEXIS 46858 (N.D. Ohio June 3, 2009).

State Auto's first motion for summary judgment was denied on December 9, 2010, while its second "cross-motion" for summary judgment was denied on February 9, 2011. (ECF Nos. 167, 78-79.) On February 23, 2011, and March 7, 2011, State Auto filed timely motions to amend judgment/motions for reconsideration – all of which were denied on March 31, 2011. (ECF No. 185.) Therefore, the County asserts that the pending motion for reconsideration – filed on August 15, 2011 – is untimely and should be dismissed for that reason alone.[2] However, as

---

[2] The County's position, though not accepted herein, is not entirely without merit. *See, e.g., Feathers v. Chevron U.S.A.*, 141 F.3d 264, 268 (6th Cir. 1998) (finding that an untimely motion for reconsideration was properly dismissed as a Rule 59 motion on timeliness grounds).

explained in another decision of the U.S. District for the Northern District of Ohio:

> "District courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment." *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991), *citing [Marconi Wireless Tel. Co. v. United States*, 320 U.S. 1 (U.S. 1943)] "A district court may modify, or even rescind, such interlocutory orders." *Id.*, *citing John Simmons Co. v. Grier Bros. Co.*, 258 U.S. 82, 88, 42 S. Ct. 196, 66 L. Ed. 475 (1922); *accord Leelanau Wine Cellars Ltd. v. Black & Red, Inc.*, 118 Fed. Appx. 942, 945, 2004 U.S. App. LEXIS 27207 (6th Cir. 2004). "An order denying summary judgment is not ordinarily a final, appealable decision." *Chesher v. Neyer*, 477 F.3d 784, 2007 U.S. App. LEXIS 3468 (6th Cir. 2007). Because the Court's order denying summary judgment is interlocutory, Rule 59(e) does not apply and it is within this Court's power and discretion to reconsider its earlier ruling.

*E-Poch Props. v. TRW Auto. U.S.*, 2007 U.S. Dist. LEXIS 14820 (N.D. Ohio Mar. 2, 2007), aff'd, 286 Fed. Appx. 276 (6th Cir. 2008); *see also King Lincoln Bronzeville Neighborhood Ass'n v. Blackwell*, 2009 U.S. Dist. LEXIS 120011 at **5-6 (S.D. Ohio, Dec. 22, 2009) (noting that despite the untimeliness of the motion for reconsideration, the strictures of Rule 59(e) did not apply where there was no final judgment and the district court is free to reconsider or reverse its decisions at any time prior to the entry of final judgment) (*citing Russell v. GTE Government Systems Corp.*, 141 Fed. App'x 429, 434 (6th Cir. 2005)).

The Court, therefore, will proceed to a discussion of the merits of State Auto's second motion for reconsideration.

**B. Merits of Motion**

**1. Notice**

State Auto argued in its first motion for summary judgment that the County failed to comply with the notice requirements of the relevant liability policy, a condition precedent to coverage. (ECF No. 163.) On December 8, 2010, Judge Nugent found that genuine issues of material fact remained as to whether the timing of the County's notice of its claim to State Auto was reasonable. (ECF No. 167.)

---

However, even the *Feathers* court stated that it is appropriate for a court to consider an untimely Rule 59(e) motion for reconsideration as a motion made pursuant to Rule 60 for relief from judgment. *Id*. "The standard for granting a Rule 60 motion is significantly higher than the standard applicable to a Rule 59 motion." *Id*. (*citing Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991), *cert. denied*, 506 U.S. 828 (1992)).

In its second motion for reconsideration, State Auto argues that new evidence establishes the timeliness of the County's notice was unreasonable as a matter of law. (ECF No. 211 at 5-13.) The underlying action against the County was initiated on June 3, 2008. (ECF No. 1.) State Auto asserts that the earliest it received notice of the claim was the middle of April 2010. (ECF No. 211 at 5.) The County, while not challenging the general timing of the notice, argues that it was reasonable under the circumstances and that State Auto was not prejudiced thereby.

There is no dispute that the State Auto policy requires that notice of a claim be given "as soon as practicable." (ECF No. 211 at 8.) "Notice provisions in insurance contracts are conditions precedent to coverage, so an insured's failure to give its insurer notice in a timely fashion bars coverage." *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 769 N.E.2d 835, 95 Ohio St. 3d 512, 517 (Ohio 2002) (*citing Owens-Corning Fiberglas Corp. v. Am. Centennial Ins. Co.*, 74 Ohio Misc.2d 183, 203, 660 N.E.2d 770 (1995)). However, in *Ormet Primary Aluminum Corp. v. Employers Ins. of Wassau*, 725 N.E.2d 646 (Ohio 2000), the Ohio Supreme Court held that "[a] provision in an insurance policy requiring notice to the insurer 'as soon as practicable' requires notice within a reasonable time in light of all the surrounding facts and circumstances." *Id.* at 842 ("A similar requirement is applied to a provision that compels notice 'immediately.'") While acknowledging that there could be some circumstances where an unexcused and significant delay might be unreasonable as a matter of law, the Ohio Supreme Court, in reversing the lower court's decision, factually distinguished *Goodyear* from *Ormet*.[3] 769 N.E.2d at 842. Furthermore, the Ohio Supreme Court explained that generally "the question of timeliness calls into play matters to be discerned *by the finder of fact*." *Id.* (emphasis added).

It is undisputed that Cuyahoga County and its employees are listed on the State Auto liability policy issued to MMS as additional insureds. (ECF No. 172, 211.) The County has asserted that MMS, for a time, was the only party that possessed the relevant State Auto general

---

[3] As explained by the Ohio Supreme Court, in *Ormet*, the insured had knowledge that its conduct – polluting – could give rise to a claim over twenty-five (25) years before it gave notice to the insurer, and that the Environmental Protection Agency identified the insured as a potentially responsible party six years prior to the notice. *Goodyear*, 769 N.E.2d at 842.

6

liability policy, and that county representatives had assumed the policy only covered automobile liability. (ECF No. 164-1, Exh A at ¶¶1-3.) The County also notes that it issued a letter to MMS on December 19, 2008, requesting that MMS put its insurance carriers on notice and provide a copy of all applicable policies to the County. (ECF No. 214-1, Exh. A.) The County avers that it was not provided the State Auto policy at that time, but only the National Fire & Marine policy. (ECF No. 214- at 5-6.) State Auto argues that the County, nonetheless, should have known about State Auto's general liability coverage on or about May 4, 2009, when Defendant MMS provided the policy declaration pages to the County pursuant to discovery. (ECF No. 211 at 7.) The County submits that its outside counsel put State Auto's independent insurance agent on notice in March of 2010 – ten months later – but that the insurance agent initially refused to tender the County's demand papers to State Auto.[4] (ECF No. 214 at 6.) State Auto issued a letter to MMS on April 27, 2010 denying coverage (ECF No. 214-3, Exh. C) and a reservation of rights letter to the County on June 15, 2010. (ECF Nos. 164, 214.)

Accepting for the sake of argument State Auto's assertion that the County knew of the State Auto policy by May of 2009, and accepting as true the County's factual assertion that it gave notice in March of 2010, the delay was, at most, ten (10) months. While a ten month delay in notice is hardly the epitome of promptness, State Auto has not cited any published Ohio law suggesting that notice given within a year after the discovery of the policy's existence is unreasonable *as a matter of law*.[5] There appears to be no hard and fast rule as to when or under what circumstances a delay becomes so significant that the question of reasonableness is

---

[4] The basis of this assertion is the affidavit of defense counsel Hilary S. Taylor, submitted as an attachment to the County's brief in opposition to State Auto's motion for summary judgment. (ECF No. 164-1, Exh. A.)

[5] The only case State Auto cites on this issue is an appellate court decision which contains a delay of *over* a year and, moreover, lacks the complexity of the present matter. *See Patrick v. Auto-Owners Ins. Co.*, 449 N.E.2d 790, 5 Ohio App. 3d 118, 119 (Ohio Ct. App., 1982) (finding an unreasonable delay in notice where the insured "did not give such notice or make [a] claim for the 'theft' until June 1979, more than one year after the automobile disappeared.")

7

removed from the purview of the finder of fact. Absent a finding that a delay was unreasonable as a matter of law, the question remains whether the timing of the notice was reasonable and, if not, whether State Auto was thereby prejudiced. Though State Auto cites plenty of law suggesting that prejudice to an insurer is presumed *once it is determined that a delay was unreasonable*, this Court simply cannot, construing all the evidence in favor of the County, determine that the delay herein was *per se* unreasonable.

After construing the evidence most strongly in favor of the non-moving party on the notice issue – the Court finds that reasonable minds could come to more than one conclusion as to the timeliness of the County's notice to State Auto.

### 2. Whether "Occurrences" Include Claims Brought Under § 1983

In the first cause of action alleging § 1983 claims, the Complaint asserts that the Defendants, including the County and MMS and its agents, "failed to adequately train and supervise the Jail corrections officers and staff in the intake, assessment and correctional and medical care of inmates who arrive at the jail while taking prescription drugs in the benzodiazepine class" and that "the rules, regulations, customs, policies and procedures of the Defendants were inadequate and unreasonable and were the moving force behind the constitutional deprivations suffered by [the decedent]." (ECF No. 99 at ¶¶63-64.) State Auto argues that pursuant to the general liability policy issued to MMS: (1) a violation of 42 U.S.C. § 1983 does not constitute an "occurrence"; and, (2) the policy excludes coverage for expected or intended injuries. (ECF No. 211 at 14-16.)

Under § 1983, "a plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action – [such as] an allegedly inadequate training program – has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was not simply negligent, but was taken with 'deliberate indifference' as to its known or obvious consequences." *Bd. of the County Comm'rs v. Brown*, 520 U.S. 397 (1997) (*citing Canton v. Harris*, 489 U.S. 378, 388 (1989)). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id*. at 410 (citations omitted). In the context of medical care, "a prisoner must allege

8

acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97 (1976); *see also Ewolski v. City of Brunswick*, 287 F.3d 492, 510 (6th Cir. 2002); *Watkins v. City of Battle Creek*, 273 F.3d 682, 686 (6th Cir. 2001). "Deliberate indifference requires that the defendants knew of and disregarded a substantial risk of serious harm to [a plaintiff's] health and safety." *Watkins* at 686. Under *Estelle*, "[a] constitutional claim for denial of medical care has objective and subjective components." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004). Medical need is objectively serious if a lay person would recognize the seriousness of the need for medical care. *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005). The subjective component of deliberate indifference "requires a plaintiff to allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). Prison officials are deliberately indifferent if they intentionally deny or delay access to medical care for a serious medical need. *Blackmore*, 390 F.3d at 895 (*citing Estelle*, 492 U.S. at 104.)

State Auto argues that the "deliberate indifference" standard in § 1983 cases is the equivalent of "intentional conduct." State Auto points out that the insurance policy: (1) covers only "accidents," and, (2) contains an exclusion barring coverage for "expected or intended injury." (ECF No. 211.) The relevant policy provisions read as follows:

> **2. Exclusions**
>
> This insurance does not apply to:
>
> **a. Expected Or Intended Injury**
>
> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.
>
> \*\*\*

> **SECTION V - DEFINITIONS** ...
>
> "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

(ECF No. 147-1, Exh. A at 62, 74) (emphasis in original).

What qualifies as an "accident" is not defined in the policy. (ECF No. 147-1, Exh. A at 72-75.) "Under Ohio law, where a term in an insurance contract is not defined by the policy, the term is to be given its ordinary meaning." *Morner v. Giuliano*, 857 N.E.2d 602, 167 Ohio App. 3d 785, 791 (Ohio Ct. App., 2006) ("The ordinary meaning of the term 'accident' in an insurance policy refers to 'unintended' or 'unexpected' happenings.")

"It is axiomatic that an insurance company is under no obligation to its insured, or to others harmed by the actions of an insured, unless the conduct alleged of the insured falls within the coverage of the policy." *Gearing v. Nationwide Ins. Co.*, 76 Ohio St.3d 34, 36, 665 N.E.2d 1115 (Ohio 1996). "Coverage is provided if the conduct falls within the scope of coverage defined in the policy, and not within an exception thereto." *Id*. Ohio courts that have reviewed contractual provisions in insurance policies similar to those written by State Auto have determined that *injuries* are either accidental or intentional and/or expected. Finding one necessarily excludes the other. In *Physicians Insurance Company. v. Swanson*, 569 N.E.2d 906, 58 Ohio St. 3d 189 (Ohio 1991), the Ohio Supreme Court explained that for an intentional injury exclusion to apply, "an insurer must demonstrate not only that the insured intended the act, but also that he intended to cause harm or injury." *Id*. at 193 (*citing with approval Quincy Mut. Fire Ins. Co. v. Abernathy*, 393 Mass. 81, 84, 469 N.E. 2d 797, 799 (1984). The *Swanson* court explained that the rationale for this rule of law is twofold:

> First, the plain language of the policy is in terms of an intentional or expected injury, not an intentional or expected act. Were we to allow the argument that only an intentional act is required, we would in effect be rewriting the policy. Second, as the courts above have noted, many injuries result from intentional acts, although the injuries themselves are wholly unintentional.

*Id*. at 193.

Herein, the State Auto policy excludes coverage where the bodily injury is expected or intended by the insured. It does not, however, exclude coverage for injuries simply because they

10

stem from intentional acts. (ECF No. 147-1, Exh. A at 62.) A more recent decision of the Ohio Supreme Court contains a thorough discussion of the intentional injury exclusions where the injury-causing act was intentional but the resultant injury either was or could have been unintentional. In *Allstate Insurance Company v. Campbell*, 128 Ohio St.3d 186, 942 N.E.2d 1090 (Ohio 2010), the Court reviewed four different exclusions for intentional acts and/or intentional injury. Therein, several boys – the insureds – placed an artificial deer on a winding road at night causing a motorist to lose control of his vehicle and injuring the occupants. *Id*. While the *Campbell* court found that an insurer was not liable under a policy excluding coverage for bodily injury directly or indirectly caused by an **intentional act** of the insured, it also found a policy provision excluding "bodily injury expected or intended by any insured" – such as the policy written by State Auto herein – does *not* bar coverage unless the doctrine of inferred intent applies. *Id*. at 196-198. *Campbell* held that the doctrine of inferred intent should not be applied in the case, because it could not be said, as a matter of law, that the act of placing the artificial deer on the road necessarily resulted in harm. *Id*. The trier of fact would have to weigh the evidence to determine whether the boys intended or expected harm and, consequently, whether the insurance agreements provided coverage. The ruling cautioned that "courts should avoid applying the [inferred intent] doctrine in cases where the insured's intentional act will not necessarily result in the harm caused by that act." *Id*. at 195. It concluded as follows:

> We hold that as applied to an insurance policy's intentional-act exclusion, the doctrine of inferred intent is not limited to cases of sexual molestation or homicide. Nevertheless, the doctrine of inferred intent applies only in cases in which the insured's intentional act and the harm caused by that act are intrinsically tied so that the harm necessarily results from the act. Because the doctrine of inferred intent does not apply to the circumstances of this case ... the trier of fact must conduct a factual inquiry on remand to determine whether the boys intended or expected the harm that resulted from their intentional actions.

*Id*. at 198.

Based on the foregoing law, the Court does not agree that actions satisfying the deliberate indifference standard governing § 1983 claims are necessarily within State Auto's expected or intended injury exclusion. Classifying an event as an "accident" hardly means that no intentional conduct preceded the injury. Conceptually, "deliberate indifference" lies somewhere

11

between negligence and the type of conduct where the intent to injure can be inferred. The conduct of MMS and its agents – in failing to properly train personnel in the handling of inmates who have been prescribed benzodiazepine class drugs – may have been an intentional act, but it cannot be said with any certainty that such an act would necessarily result in the harm that occurred herein. This is precisely the kind of situation where the doctrine of inferred intent should not be applied per the *Campbell* court. Assuming circumstances exist that satisfy the failure to treat requirements – (1) perception of facts giving rise to an inference of substantial risk, (2) the actual drawing of such inference, and, (3) disregarding such risk – those acts, while arguably involving intentional conduct, do not render a resulting harm expected or intended. Even an injury that is substantially certain to occur does not meet that threshold. As explained by the *Campbell* court, the inferred intent doctrine is even more stringent than the substantial certainty test it rejected. For inferred intent to apply, the harm must necessarily result from the act. The Court cannot find, as a matter of law, that those who treated Sean Levert, or enacted training policies that ultimately may be tied to his death, either (a) intended to harm him, or (b) that the acts of those individuals necessarily resulted in his death. Assuming that the risk to the decedent was a known and obvious consequence of the jail's policies, it cannot be said that the death of Sean Levert was necessarily an inevitable result.[6]

State Auto relies heavily on a state appellate opinion. *See City of Sharonville v. Am. Emplrs. Ins. Co.*, 818 N.E.2d 295, 299, 158 Ohio App. 3d 576 (Ohio Ct. App. 2004), *aff'd* 846 N.E.2d 833 (Ohio 2006).[7] In *dicta*, the *Sharonville* court observed that "[c]ivil actions for

---

[6] This opinion should not be construed as making any factual determinations. To the contrary, factual determinations are necessary before any of these issues can be decided, rendering summary judgment inappropriate. As Judge Nugent's order denying State Auto's first motion for reconsideration makes clear, "[t]o the extent that State Auto may have properly raised affirmative defenses including, but not limited to, notice, then any such defenses are not precluded and may be raised at trial." (ECF No. 185.)

[7] The Ohio Supreme Court's affirmance dealt only with the issue of whether a law enforcement liability policy applied, and did not address appellate court's ruling on the general liability policy.

claims of deprivation of rights, by their very nature, are based upon intentional conduct." The *Sharonville* decision, however, does not contain any discussion concerning the deliberate indifference standard or the interplay of that standard with intentional injury exclusions in insurance contracts. State Auto's interpretation of *Sharonville* is wholly inconsistent with the more recent decision of the Ohio Supreme Court in *Campbell*, and, as such, does not represent the law of Ohio.

Therefore, it is recommended that State Auto's motion for reconsideration be denied with respect to its argument that the policy excludes coverage of § 1983 claims. Furthermore, it is questionable whether the Court should grant State Auto's motion for reconsideration given the procedural posture of the case. A review of State Auto's Brief in Opposition/Cross-Motion for Summary Judgment (ECF No. 172) reveals that this argument was not raised before the District Judge. A court may grant a motion to amend or alter judgment if a clear error of law or newly discovered evidence exists, an intervening change in controlling law occurs, or to prevent manifest injustice. *See Gencorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999). Nonetheless, "[i]t is not the function of a motion to reconsider either to renew arguments already considered and rejected by a court or 'to proffer a new legal theory or new evidence to support a prior argument when the legal theory or argument could, with due diligence, have been discovered and offered during the initial consideration of the issue.'" *McConocha v. Blue Cross & Blue Shield Mut. of Ohio*, 930 F.Supp. 1182, 1184 (N.D. Ohio 1996) (*quoting In re August 1993 Regular Grand Jury*, 854 F.Supp. 1403, 1408 (S.D. Ind. 1994)); *Dana Corp. v. United States*, 764 F.Supp. 482, 489 (N.D. Ohio 1991) (if a "[party] views the law in a light contrary to that of [the District] Court," its "proper recourse" is not by way of a motion for reconsideration "but appeal to the Sixth Circuit.")

Motions for reconsideration are not the appropriate venue for advancing new arguments that could have been raised previously. This specific argument is not based on any new evidence or change in the law, and State Auto has not raised manifest injustice. Nothing prevented State Auto from making this "occurrence" argument in its original briefs. Because this argument was not raised before, the District Judge could fairly consider the argument waived.

13

### 3. Liability Under § 1983

In its cross-motion for summary judgment, State Auto conceded that "it is undisputed that the Cuyahoga County and its employees are listed on the State Auto policy as named additional insureds, [but that] the policy extends coverage to such an additional insured only with respect to liability for 'bodily injury' caused by the alleged acts or omissions of MMS or its agents in the performance of its ongoing operations for the Cuyahoga County Defendants ..." (ECF No. 172.) Nonetheless, State Auto argued then, as it does now, that the County cannot be held vicariously liable under § 1983 for the acts or omissions of Defendant MMS or its agents. (ECF Nos. 172, 211.) The County responds that it had a duty to provide health care to incarcerated individuals, and that this duty can not be delegated according to the law, rendering it responsible for the failures of MMS in the performance of that duty. (ECF No. 214 at 16-20.)

State Auto is correct that § 1983 "does not permit a plaintiff to sue a local government entity on the theory of respondeat superior." *Gregory v. City of Louisville*, 444 F.3d 725, 752-753 (6th Cir. 2006); *see also Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978) ("[§1983] cannot be easily read to impose liability vicariously on governing bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor.") Therefore, the plaintiff herein could not maintain an action against the County due solely to the actions of its employees, as "[a] plaintiff may only hold a local government entity liable under § 1983 for the entity's own wrongdoing." *Id*. The Sixth Circuit has explained that a local government entity, such as the County, violates § 1983 where its "official policy or custom actually serves to deprive an individual of his or her constitutional rights." *Id*.

> A city's custom or policy can be unconstitutional in two ways: 1) facially unconstitutional as written or articulated, or 2) facially constitutional but consistently implemented to result in constitutional violations with explicit or implicit ratification by city policymakers. *Id*. Where the identified policy is itself facially lawful, the plaintiff "must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice." *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 407, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997) (quoting *Harris*, 489 U.S. at 388 (1989)). "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Brown*, 520 U.S. at 410. In other words, the

14

>  risk of a constitutional violation arising as a result of the inadequacies in the municipal policy must be "plainly obvious."  *Id*. at 412; *see also Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir. 1997).

*Gregory*, 444 F.3d at 752-753.  Therefore, "'municipal liability under § 1983 attaches where -- and only where -- a deliberate choice to follow a course of action is made from among various alternatives' by city policymakers."  *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (citing *Pembaur v. Cincinnati*, 475 U.S. 469, 483-484 (1986); *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985)); *King v. Marion County Sheriff's Dep't*, 2010 U.S. Dist. LEXIS 64205 (E.D. Tenn. June 28, 2010) ("Plaintiffs must identify the policy, connect the policy to the county itself, and show the particular injury was incurred because of the execution of that policy.")

However, the absence of liability against the County on a theory of *respondeat superior* does not end the matter.  Both parties rely on *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700 (11th Cir. 1985).  Therein, the Eleventh Circuit Court of Appeals explained as follows:

> The federal courts have consistently ruled that governments, state and local, have an obligation to provide medical care to incarcerated individuals.  *See Estelle, supra.*  This duty is not absolved by contracting with an entity such as Prison Health Services.  *Although Prison Health Services has contracted to perform an obligation owed by the county, the county itself remains liable for any constitutional deprivations caused by the policies or customs of the Health Service*.  In that sense, the county's duty is non-delegable.

*Id*. at 705 (emphasis added); *see also Moldowan v. City of Warren*, 578 F.3d 351, 394 (6th Cir. 2009) (although Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort, this "official policy" requirement did not preclude municipal liability "for a single decision by municipal policymakers under appropriate circumstances.") (*citing Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986)).

Here, the language of the policy states as follows:

A.  Section II - Who Is An Insured is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy.  Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

  1.  Your acts or omissions; or

15

>    2. The acts or omissions of those acting on your behalf;
>
>    in the performance of your ongoing operations for the additional insured.

(ECF No. 147-1, Exh. A at 60.)

It is the Court's opinion, from the above law, especially *Ancata*, that the County could be held liable for "constitutional deprivations caused by the policies or customs" of the insured – MMS. By allowing MMS to establish and implement policies and procedures for the non-delegable responsibility to provide adequate healthcare to inmates, the County, by law, assumed those policies and procedures as its own. The liability policy does not require a legal determination of "vicarious liability" or liability based on "*respondeat superior*." The County's liability completely hinged on whether the policies implemented by MMS and its agents satisfied the constitutional duty to provide those incarcerated with legally required medical care. As such, State Auto's argument is not well taken.

In addition, State Auto presents this argument to the Court for the first time, as it was not raised in State Auto's motions for summary judgment or in its first motion for reconsideration. Because this argument was not raised before, the District Judge could fairly consider the argument waived

### IV. Conclusion

For the foregoing reasons, it is recommended that State Auto's Motion for Reconsideration (ECF No. 211) be DENIED.

s/ Greg White
United States Magistrate Judge

Date: December 8, 2011

**OBJECTIONS**
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981).** *See also Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**

16